JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

JEFFREY B. SCHENK (CSBN 234355)
Assistant United States Attorney

   150 South Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5061
   Facsimile: (408) 535-5081
   jeffrey.b.schenk@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>SETH SUNDBERG,<br><br>    Defendant. | No. CR 09-00928-JF<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date: May 20, 2010<br>Time: 10:00 a.m. |

## I. INTRODUCTION

The United States hereby submits its sentencing memorandum in the above-referenced case. The defendant, employing what is known as the "Original Issue Discount" scheme, illegally obtained from the Internal Revenue Service ("IRS") a tax refund in the amount of $5,083,609.25. The defendant received this refund by making fraudulent claims to the IRS concerning the extent to which he was entitled to receive previously-withheld tax prepayments.

## II. PROCEDURAL HISTORY

On September 9, 2009, the defendant was arrested pursuant to an arrest warrant signed by U.S. District Court Judge, formerly Magistrate Judge, Richard Seeborg. That same day, the defendant made his initial appearance before Magistrate Judge Howard R. Lloyd. The

government requested that the defendant be detained pending trial. Judge Lloyd provisionally appointed the Federal Public Defender's Office to represent the defendant, and detained the defendant pending a full bail hearing scheduled for September 14, 2009.

On September 14, the defendant fired the Federal Public Defender's Office and requested that he be allowed to represent himself. Judge Lloyd held a *Faretta* hearing and granted the defendant's request. Following a full detention hearing, Judge Lloyd ordered the defendant detained. On September 23, 2009, a federal grand jury returned a three-count indictment against the defendant, charging him with mail fraud, making a false statement in a tax return, and making false claims against the United States. The defendant was arraigned on the indictment the same day.

The defendant made his first appearance in district court on September 30, 2009. During the course of several status hearings, the district court offered the defendant the opportunity to receive court-appointed counsel, either in a lead or advisory fashion. Every time, the defendant rejected the court's offer. Before setting the case for trial, the district court ordered a competency examination, in which the defendant was found to be competent. Also, the district court granted the defendant's request to participate in a settlement conference, and ordered both parties to appear before the magistrate court. The settlement conference was unsuccessful. On December 9, 2009, the district court set the case for trial to begin on January 4, 2010. Throughout December 2009, the government provided the defendant with additional discovery, notice of its intention to rely on expert testimony, and notice of its intention to introduce evidence pursuant to Federal Rules of Evidence 902(11). The defendant never challenged nor opposed the government's pretrial motions.

On January 4, 2010, with a jury panel already summoned, the defendant informed the Court that he desired additional time to review discovery. The Court set a new trial date for January 15, 2010, and set an intervening status hearing on January 8, 2010.

On January 8, 2010, the defendant told the Court that he desired to change his plea to guilty, after being given an opportunity to review the original charging document. The Court gave the defendant the opportunity to review the original indictment, and instructed the

defendant not to alter or deface it. While in the custody of the U.S. Marshal, the defendant was provided with the original charging document. The defendant, contrary to the district court's express instructions, wrote on the original document. As a result of the defendant's actions, the district court referred two matters to the U.S. Attorney's Office for consideration of possible criminal charges, including contempt of court for violating the Court's order and defacing the indictment. The defendant informed the Court that he desired to change his plea to guilty. The Court proceeded with an extensive Rule 11 plea colloquy. After receiving the defendant's guilty plea, the Court found that the defendant had made a knowing and voluntary guilty plea. The Court set the matter for sentencing on March 24. The sentencing date has been continued once to allow for a substitution of the assigned Probation Officer and allow the Probation Office an opportunity to prepare the Presentence Report.

### III. SENTENCING GUIDELINES CALCULATION

#### A. Base Offense Level and Grouping Rules

The government agrees with the Probation Officer's calculation of the applicable United States Sentencing Guidelines ("U.S.S.G"). These Guidelines are advisory after the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005). The government also agrees with the Probation Office's conclusion that the three counts for which the defendant was convicted are a single group of closely related counts. [PSR. ¶ 33.] Therefore, pursuant to U.S.S.G. § 3D1.3(b), "[w]hen the counts involve offenses of the same general type to which different guidelines apply, [the court should] apply the offense guideline that produces the highest offense level." Following that instruction, the offense guidelines for the counts that produce the highest offense level should be applied – counts one and three (mail fraud and false claim against the United States). The defendant's base offense level for the mail fraud and false claims counts both begin at 7. [U.S.S.G. §2B1.1 and PSR ¶ 35.] The base offense level is increased by eighteen (18) levels, to 25, due to the amount of loss, over $5,000,000, involved in this particular offense. [U.S.S.G. §§ 2B1.1(b)(1)(J) and PSR ¶ 36.] Therefore, counts one and

three produce the highest offense level, a total offense level of 25. [PSR ¶¶ 34 - 53.][1]

### B. Obstruction of Justice Enhancement

An additional increase of two levels is appropriate in this case due the defendant's attempts to obstruct justice, as discussed in detail above, by defacing the original charging document. [U.S.S.G. § 3C1.1 and PSR ¶¶ 28-29, 39.] The defendant's resulting adjusted offense level is 27. [PSR ¶ 40.]

### C. Acceptance of Responsibility and the Third Point

Pursuant to U.S.S.G. § 3E1.1(a), Acceptance of Responsibility, the defendant is eligible for a downward adjustment of two levels, resulting in a total offense level of 25. [PSR ¶¶ 49 and 50.] The government will not move for the additional one-point reduction pursuant to U.S.S.G. § 3E1.1(b). Contrary to the Guideline's requirements, this defendant did not "assist[] authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently[.]" U.S.S.G. § 3E1.1(b). Specifically, this defendant failed to meet these requirements in two important respects. First, the defendant pleaded guilty several days after the initially-scheduled first day of trial — after the government prepared for trial, subpoenaed and made available several out-of-town witnesses, and after the court compelled the attendance of a full jury panel. Second, the defendant still has not assisted in the investigation of his misconduct nor the recovery of the IRS funds. Nearly half of the illegally-obtained $5,000,000 is still outstanding. *See* Section IV. The defendant has yet to provide the government any assistance in recovering the proceeds from his illegal activity. Moreover, the government has expended significant resources identifying, levying, and otherwise seizing the stolen funds.

### D. Guidelines Range

Following the adjustment for acceptance, the defendant's adjusted offense level is 25.

---

[1] The defendant's U.S.S.G. total offense level for count two, false statement on a tax return, pursuant to § 2T4.1 is 24. Therefore, according to the grouping rules discussed above, we apply the highest offense level – from counts one and three – a 25 (which becomes a 27 after the increase for obstruction).

UNITED STATES' SENTENCING MEMORANDUM
CR CASE # 09-00928-JF 4

[PSR ¶ 53.] The government and the Probation Officer calculate that the defendant has 1 total criminal history point. Therefore, he falls into Criminal History Category I. [PSR ¶ 57.] An adjusted offense level of 25 when indexed with a Criminal History Category of I yields a guideline range of 57 - 71 months imprisonment. Probation Officer Flores concluded that the significant nature, circumstances, and seriousness of this offense demand a high-end guideline sentence. Therefore, Officer Flores recommended that this Court impose a 71-month custodial sentence. [PSR Sentencing Recommendation.]

### IV. THE GOVERNMENT'S SENTENCING RECOMMENDATION

The government agrees with Officer Flores' recommendation and urges the Court to impose a 71-month custodial sentence, 3 years of supervised release, a $100,000 fine, a $300 special assessment, and restitution in the amount of $2,488,613.38.

**A.     The Custodial Sentence**

First, among the 18 U.S.C. § 3553(a) factors a sentencing court must consider are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. 18 U.S.C. § 3553(a)(1) and (2)(A). *emphasis supplied*. Here, a high-end guideline sentence would punish the defendant justly and adequately for his significant criminal conduct and apparent lack of remorse for his actions. Moreover, since this defendant consistently questions the legitimacy and jurisdiction of this Court, a severe custodial sentence is necessary to impress upon this defendant, and similar defendants, respect for the law.

The defendant stole a substantial sum of money from the federal government. Immediately upon receiving these illegal funds, the defendant began transferring funds to various bank accounts, setting up a foreign corporation, and hoarding gold and silver. All of these actions, relied upon by Magistrate Judge Lloyd when detaining this defendant, demonstrate the significant planning involved not only in the defendant's scheme, but also his knowledge that the funds' origin must remain concealed. In fact, to this date, the defendant has failed to assist the government in recovering any portion of the funds. Clearly, the defendant is attempting to keep

a significant portion of the funds concealed until after he is released from custody. Such an attitude defies deterrence. As a result, the deterrent value of this defendant's sentence lies solely within the sphere of general deterrence. And, that fact, in turn, increases the need for the sentence imposed upon this defendant to reflect the seriousness of this offense. A sentence at the high-end of the applicable Guidelines range, 71-months, will do just that.

### B. Restitution

As discussed above, the defendant illegally obtained from the IRS a tax refund in the amount of $5,083,609.25. To date, the government has located and seized $2,594,995.87. This leaves $2,488,613.38 outstanding. [PSR ¶¶ 25 - 27.] Therefore, the appropriate restitution order in this case is in the amount of $2,488,613.38.

### C. Fine

Again, the government supports Officer Flores' recommendation that this Court impose a fine in the amount of $100,000. Officer Flores and the government share a concern that this defendant will attempt to conceal the illegal funds until after he serves his custodial sentence. At this point, over $2,000,000 remains outstanding. A significant fine will justly punish this defendant. The fine will also serve to deter future tax theft crimes, as a strong disincentive to fraudulently claim tax refunds.

## V. CONCLUSION

For the reasons stated above, the government urges the Court to impose the sentence recommended by the Probation Office: a 71-month custodial sentence, 3 years of supervised release, a $100,000 fine, a $300 special assessment, and restitution in the amount of $2,488,613.38.

DATED: May 13, 2010          Respectfully submitted,

                             JOSEPH P. RUSSONIELLO
                             United States Attorney


                             ___/s/_____
                             JEFFREY B. SCHENK
                             Assistant United States Attorney